## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN KENNEY,<br>    *Plaintiff,*<br><br> v.<br><br>RHODE ISLAND CANNABIS CONTROL<br>COMMISSION AND KIMBERLY AHEARN, IN HER<br>OFFICIAL CAPACITY,<br>    *Defendants.* | Civil Action No.<br><br>**COMPLAINT FOR**<br><br>1. **42 U.S.C. § 1983**<br>  **DORMANT COMMERCE**<br>  **CLAUSE**<br>2. **DECLARATORY**<br>  **JUDGMENT** |

## COMPLAINT

### INTRODUCTION

Plaintiff John Kenney brings this action against Defendants Rhode Island Cannabis Control Commission ( "Commission") and its Director, Kimberly Ahern, to challenge and obtain relief from what will inevitably be, pursuant to R.I. Gen. Laws § 21-28.11-1 *et seq.*, the Defendants' unconstitutional cannabis license application program for a retail cannabis business license in Rhode Island ("License").

### PARTIES

1. Plaintiff John Kenney is an individual who is a resident and citizen of the State of Florida.

2. The Commission is an independent commission established by the Rhode Island Cannabis Act of 2022, R.I. Gen. Laws § 21-28.11-1 *et seq.* ("Act"). The Commission was created to oversee the regulation, licensing, enforcement, and control of regulated adult use and medical cannabis in Rhode Island and is authorized to exercise all powers necessary for the implementation, administration, and enforcement of cannabis regulation and policy for both

adult use and medical cannabis in Rhode Island.

3.     Defendant Ahern is the Director of the Commission, nominated by Governor Daniel McKee and confirmed by the Rhode Island Senate on June 13, 2023, to oversee the regulation, licensing, and enforcement of adult use and medical cannabis.  She is sued in her official capacity only.

## JURISDICTION AND VENUE

4.     Because the instant action involves questions under the Constitution of the United States, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5.     The Court has personal jurisdiction over the Commission because it is a citizen of Rhode Island.

6.     The Court has personal jurisdiction over Defendant Ahern because, as required by the Act and on information and belief, she is a Rhode Island resident. Further, she will be required to, pursuant to the Act, take actions in conformance with the provisions of that law.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because, on information and belief, the Commission is an agency of Rhode Island headquartered in Warwick, the laws challenged herein were passed in this judicial district, and Defendants performed, or will be constrained by Rhode Island law to perform, the actions complained of herein while within this judicial district.

## RELEVANT FACTS/BACKGROUND

8.     The Rhode Island General Assembly enacted the Act in 2022 by P.L. 2022, ch. 31, § 1, with an effective date of May 25, 2022.

9.     The Act created the Commission and vested it with the power to promulgate cannabis regulations, including those related to the licensing of both medical and adult use cannabis. R.I. Gen. Laws §§ 21-28.11-2; 21-28.11-4(a); 21-28.11-5.

10.     Aside from "hybrid cannabis retailer[s]" – formerly medical cannabis retailers that, during a transition period, may sell both medical and adult use cannabis to consumers (R.I. Gen.

2

Laws §§ 21-28.11-10(a), (f); 21-28.11-3(28), 21-28.11-5) – the Act allows the Commission to issue 24 Licenses, divided evenly among six Rhode Island geographic areas, with four such licenses reserved for "workers' cooperative" applicants and, another, four such licenses reserved for "social equity" applicants, all as defined by statute. R.I. Gen. Laws §§ 21-28.11-10.2(a); 21-28.11-3(16); 21-28.11-10.3; 21-28.11-3(42).

11.    Critically, R.I. Gen. Laws § 21-28.11-10.2(b)(2) provides that "[t]o qualify for issuance of a cannabis retail license . . . an applicant shall "[p]rovide proof that *the applicant is . . . a resident of the state [of Rhode Island]*." (*Id.* (emphasis added)). Further, another provision of the Act, R.I. Gen. Laws § 21-28.11-10.3(3), makes clear that *only a* "*Rhode Island* resident or . . . business entity" may hold a majority interest in a Rhode Island Cannabis License (*id.*).[1]

12.    Upon information and belief, while the Commission has yet to promulgate any regulations for licenses, it is expected to do so towards the end of this year, with the roll out of regulations to include those relating to applications for Licenses.

13.    Upon information and belief, the regulations will – as they ***must*** under the Act's requirements – be "consistent with [the Act] for the administration, clarification and enforcement of provisions regulating and licensing cannabis establishments and the sale, possession and use of cannabis. The rules and regulations ***shall include***, but not be limited to:

(1)    Methods and forms of application which an applicant for a license shall follow and complete before consideration by the commission;

(2)    Requirements for the information to be furnished by an applicant or licensee;

(3)    Criteria for evaluation of the application for a license;

---

[1]    In most relevant part, R.I. Gen. Laws § 21-28.11-3(3) provides that "'Applicant' means a Rhode Island resident or a business entity with a principal place of business located in Rhode Island to include, but not limited to, a corporation, limited liability company, limited liability partnership or partnership, and in which fifty-one percent (51%) of the equity in the business entity is owned by residents of Rhode Island, and the Rhode Island resident or business entity has made application for issuance of a license or certificate to own or engage in a cannabis business subject to the provisions of this chapter."

**(4)**      Qualifications for licensure and minimum standards for employment that are directly and demonstrably related to the operation of a cannabis establishment and similar to qualifications for licensure and employment standards in connection with the manufacture, distribution or sale of alcoholic beverages as regulated under title 3 of the general laws; provided, that a criminal conviction relating solely to the possession of marijuana or cannabis shall not automatically disqualify an individual from eligibility for employment or licensure in connection with a cannabis establishment pursuant to § 21-28.11-12.1;

**(5)**      In consultation with the cannabis advisory board, identification of factors to be evaluated in the approval and certification of social equity applicants and establishment of procedures and policies to promote and encourage full participation in the regulated cannabis industry by people from communities that have previously been disproportionately harmed by cannabis prohibition and enforcement;

**(6)**      In accordance with all applicable law, standards for the payment or reporting of licensure fees and taxes;

**(7)**      Requirements for the information to be furnished by a licensee to the licensee's employees;

**(8)**      Requirements for fingerprinting or other method of identification of an applicant for a license or a licensee and the employees of licensees;

**(9)**      Procedures and grounds for the revocation or suspension of a license or registration;

**(10)**      Minimum uniform standards of accounting procedures;

**(11)**      Requirements for record keeping by cannabis establishments and procedures to track cannabis cultivated, processed, manufactured, delivered or sold by cannabis establishments;

**(12)**      Minimum standards for the requirement that all licensees possess and operate an interoperable publicly available application programming interface seed-to-sale tracking system sufficient to ensure the appropriate track and trace of all cannabis cultivated, processed or manufactured pursuant to this chapter;

**(13)**      Standards and procedures to leverage seed-to-sale tracking technology which may allow for the appropriate transfer or acquisition of cannabis seeds, clones, cuttings, plants or plant tissue between medical and nonmedical establishments;

4859-8674-5036, v. 1

**(14)**     Registration requirements for employees of cannabis establishments including ensuring that employees be properly trained in the performance of their duties as necessary;

**(15)**     Minimum security requirements for licensees sufficient to deter and prevent theft and unauthorized entrance into areas containing cannabis, which may include, but not be limited to, the use of security personnel, security cameras, or alarms;

**(16)**     Minimum standards for liability insurance coverage;

**(17)**     Requirements and procedures, utilizing best practices, to prevent the sale, delivery or transfer of cannabis to persons under twenty-one (21) years of age, or the purchase of cannabis on behalf of a person under twenty-one (21) years of age to include, but not limited to, the establishment of age verification procedures;

**(18)**     Health and safety standards, established in consultation with the department of health, for the cultivation, processing, manufacturing and distribution of cannabis, including standards regarding sanitation for the preparation, storage, handling and sale of food products, including compliance with state sanitation requirements, and health inspections; provided, however, that the authority to promulgate regulations pertaining to the use of pesticides shall remain with the department of environmental management pursuant to the provisions of chapter 25 of title 23;

**(19)**     Requirements for the packaging and labeling of cannabis and cannabis products that shall, at a minimum:

    **(i)** Require the most current consumer product safety commission standards, set forth in 16 C.F.R. 1700 et seq.; and

    **(ii)** Protect children from accidently ingesting cannabis or cannabis products, including by making packaging certified child-resistant and resealable;

**(20)**     Requirements and restrictions for advertising, marketing and branding of cannabis and cannabis products;

**(21)**     Requirements for the safe disposal of excess, contaminated, adulterated or deteriorated cannabis, which shall consider policies which promote the reasonable remediation and/or recycling of such waste, including, but not limited to, recycled industrial products;

**(22)**     Procedures and requirements to enable the transfer of a license for a cannabis establishment to another qualified person or to another suitable location in compliance with the provisions of § 21-28.11-10.2 following notification and approval by the commission; provided however, that a license issued to a social

equity applicant shall only be transferred to another qualified social equity applicant, and a license issued to a workers' cooperative applicant shall only be transferred to another qualified workers' cooperative applicant;

**(23)**　　　Requirements to establish a process allowing the commission to order a prohibition on the sale of a cannabis product found especially appealing to persons under twenty-one (21) years of age including a means for allowing a cannabis product manufacturer to voluntarily submit a product, its packaging and intended marketing to the commission for preliminary determination whether the product is especially appealing to persons under twenty-one (21) years of age;

**(24)**　　　Requirements that may prohibit cannabis product manufacturers from altering or utilizing commercially-manufactured food products when manufacturing cannabis products unless the food product was commercially manufactured specifically for use by the cannabis product manufacturer to infuse with cannabis;

**(25)**　　　Energy and environmental standards for licensure and licensure renewal of cannabis establishments licensed as a cannabis cultivator or cannabis product manufacturer;

**(26)**　　　If determined necessary to protect or promote public health and safety, the commission may establish reasonable limits for cannabis product potency and/or dosing; provided that, in the interest of maintaining a stable cannabis market, before imposing such limits, the commission shall give due consideration to the limits on potency and/or dosing imposed by neighboring states;

**(27)**　　　The testing and safety of cannabis and cannabis products, including but not limited to, regulations promulgated by the commission in consultation with the department of health, as applicable which:

　　**(i)** License and regulate the operation of cannabis laboratory testing facilities, including requirements for equipment, training, and qualifications for personnel;

　　**(ii)** Set forth procedures that require random sample testing to ensure quality control, including, but not limited to, ensuring that cannabis and cannabis products are accurately labeled for tetrahydrocannabinol (THC) content and any other product profile;

　　**(iii)** Establish testing for residual solvents or toxins; harmful chemicals; dangerous molds or mildew; filth; and harmful microbials such as E. coli or salmonella and pesticides, and any other compounds, elements, or contaminants;

4859-8674-5036, v. 1

**(iv)** Require that all cannabis and cannabis products must undergo random sample testing at a licensed cannabis testing facility or other laboratory equipped to test cannabis and cannabis products that have been approved by the commission;

**(v)** Require any products which fail testing be quarantined and/or recalled and destroyed in accordance with regulations;

**(vi)** Allow for the establishment of other quality assurance mechanisms which may include but not be limited to, the designation or creation of a reference laboratory, creation of a secret shopper program, round robin testing, or any other mechanism to ensure the accuracy of product testing and labeling;

**(vii)** Require cannabis establishment licensees and cannabis products to comply with any applicable food safety requirements determined by the commission and/or the department of health;

**(viii)** Include any additional requirements deemed necessary by the commission as determined in consultation with the department of health; and

**(ix)** Allow the commission, in coordination with the department of health, at their discretion, to temporarily remove, or phase in, any requirement for laboratory testing if it finds that there is not sufficient laboratory capacity for the market;

**(28)**    Standards and restrictions for cannabis manufacturing and processing which shall include, but not be limited to, requirements that cannabis processors:

**(i)** Comply with all applicable building and fire codes;

**(ii)** Receive approval from the state fire marshal's office for all forms of manufacturing that use a heat source or flammable solvent;

**(iii)** Require any cannabis processor that manufactures edibles of cannabis infused food products to comply with all applicable requirements and regulations and obtain a food business license as defined by § 21-27-1 issued by the department of health's office of food safety; and

**(iv)** Comply with any other requirements deemed suitable by the commission;

**(29)**    Standards for manufacturing or extracting cannabinoid oils or butane hash oil;

**(30)**    General operating requirements, minimum oversight, and any other activities, functions, or aspects of a cannabis establishment licensee in furtherance

7

of creating a stable, regulated cannabis industry and mitigating its impact on public health and safety;

**(31)**    Rules and regulations based on federal law, provided such rules and regulations are designed to comply with federal guidance and mitigate federal enforcement against the cannabis establishments and adult use establishments authorized, licensed and operated pursuant to this chapter;

**(32)**    Coordinate and implement the transition and transfer of regulatory authority of medical marijuana from the department of business regulation to the commission; and

**(33)**    Requirements that, after March 1, 2023, according to a timeline determined by the commission, patients with out-of-state medical marijuana cards must also possess and produce a valid government issued identification demonstrating residency in the same state jurisdiction that issued the medical marijuana card.

14.    Therefore, it is beyond peradventure that the forthcoming regulations will contain the Act's requirements, including those challenged by Plaintiff in this action.

15.    Plaintiff, either individually or through a business entity, intends to apply for a License.

16.    Plaintiff is a resident and citizen of Florida; he is not a Rhode Island resident, nor does he have any interest in a "business entity with a principal place of business located in Rhode Island[.]" Gen. Laws § 21-28.11-13(3).

17.    Plaintiff is not eligible under the Act for a majority interest License because he has never lived in, nor lives in, Rhode Island.

18.    The aforementioned residency requirements of the Act explicitly discriminate against residents of other states and are thus precisely the type of state laws that are prohibited by the dormant Commerce Clause of the U.S. Constitution. *See* U.S. Const. Art. I, § 8, Cl. 3.

19.    The State of Rhode Island cannot show a legitimate local purpose for the residency requirement, because its self-evident purpose is to discriminate against non-residents and reserve, to Rhode Island licensees only, the enormous economic opportunities available for licensees.

20.    As Rhode Island has impermissibly – and unconstitutionally – sought to favor and prefer its residents over non-residents, Plaintiff brings this action to seek redress and end the state's unconstitutional scheme.

## COUNT 1

### U.S. Const. Art. I, § 8, Cl. 3, 42 U.S.C. § 1983

21.    Plaintiff realleges and incorporates herein by reference each of the allegations set forth in the preceding paragraphs of the Complaint as though fully set forth herein.

22.    A state, including its subdivisions, may not enact laws that discriminate against citizens of other states. *See, e.g., Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019) (striking down as unconstitutional a Tennessee law that allowed only individuals who resided in Tennessee for at least two years to apply for liquor store licenses).  Indeed, in *Northeast Patients Group v. United Cannabis Patients and Caregivers of Maine*, 45 F.4th 542 (C.A.1 (Me.), 2022), the United States Court of Appeals for the First Circuit held that Maine's residency requirement for officers and directors of medical marijuana dispensaries violated the dormant Commerce Clause.

23.    Defendants are charged with and will enforce the Act's provisions, and, upon information and belief, will promulgate regulations consistent with the Act requiring applicants for Licenses to be at least 51% owned by Rhode Island residents.

24.    The residency requirements of §§ 21-28.11-10.2(b)(2) and 21-28.11-3(3) facially discriminate against non-residents.

25.    Such discriminatory residency requirements do not have a legitimate local purpose.

26.    Plaintiff is harmed by the residency requirements of §§ 21-28.11-10.2(b)(2) and 21-28.11-3(3) because such provisions target Plaintiff as a non-resident, preventing Plaintiff from owning or having a majority interest in any License, and, thus, severely limits Plaintiff's economic opportunities in Rhode Island's cannabis industry.

27.    Declaratory relief is needed to resolve this dispute between Defendants and

4859-8674-5036, v. 1

Plaintiff because the residency requirements of §§ 21-28.11-10.2(b)(2) and 21-28.11-3(3), violate the United States Constitution and subject Plaintiff to serious, concrete, and irreparable injuries.

28.      Because this is an action to enforce Plaintiff's constitutional rights brought pursuant to 42 U.S.C. § 1983, Plaintiff should receive his reasonable attorney's fees in this case. *See* 42 U.S.C. § 1988.

<u>**COUNT 2**</u>
**U.S. Const. Art. I, § 8, Cl. 3, 28 U.S.C. § 2201**

29.      Plaintiff realleges and incorporates herein by reference each of the allegations set forth in the preceding paragraphs of the Complaint as though fully set forth herein.

30.      The residency-requirement provisions of §§ 21-28.11-10.2(b)(2) and 21-28.11-3(3) violate the dormant Commerce Clause of the United States Constitution and are thus unenforceable.

31.      The residency residency-requirement provisions of §§ 21-28.11-10.2(b)(2) and 21-28.11-3(3) directly harm Plaintiff because such provisions target Plaintiff as a non-resident, preventing Plaintiff from owning or having a majority interest in any License, and, thus, severely limits Plaintiff's economic opportunities in Rhode Island's cannabis industry.

32.      Defendants, upon information and belief, take the position that the residency requirements are enforceable and that they will enforce such License application requirements.

33.      An actual controversy exists between Plaintiff and Defendants as to whether the residency requirements are enforceable. Plaintiff, as a non-resident, will, under no circumstances, be able to successfully apply for a majority interest License in Rhode Island.

34.      Declaratory judgment relief is necessary and needed to resolve this dispute between the Plaintiff and the Defendants.

35.      Under 28 U.S.C. § 2201, this Court has the power to declare the rights of the parties.

**WHEREFORE,** Plaintiff requests that this Court enter judgment

    A)  declaring that the residency requirements for Licensee applicants, §§ 21-28.11-10.2(b)(2) and 21-28.11-3(3), violate the United States Constitution;

    B)  awarding Plaintiff his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

    C)  granting such other and further relief as the Court deems just and proper.


Respectfully submitted,

**JOHN KENNEY**

By His Attorneys,

PANNONE LOPES DEVEREAUX & O'GARA LLC

*/s/ Aaron L. Weisman*
Aaron L. Weisman (#4438)
PANNONE LOPES DEVEREAUX & O'GARA LLC
1301 Atwood Avenue, Suite 215 N
Johnston, RI  02919
(401) 824-5100
(401) 824-5123 (fax)
aweisman@pldolaw.com

Dated: June 26, 2024

11