**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| JUSTYNA JENSEN,<br>Plaintiff,<br><br>v.<br><br>RHODE ISLAND CANNABIS CONTROL COMMISSION and KIMBERLY AHEARN, IN HER OFFICIAL CAPACITY,<br>Defendants. | C.A. No. 24-cv-191-MRD-AEM |
| JOHN KENNEY,<br>Plaintiff,<br><br>v.<br><br>RHODE ISLAND CANNABIS CONTROL COMMISSION and KIMBERLY AHEARN, IN HER OFFICIAL CAPACITY,<br>Defendants. | C.A. No. 24-cv-252-MRD-AEM |

**MEMORANDUM AND ORDER**

Melissa R. DuBose, United States District Judge.

On June 10, 2026, the Governor of Rhode Island signed into law Senate Bill 3313 ("SB 3313") which amended the provisions of the Rhode Island Cannabis Act ("Act") that Plaintiffs Jensen and Kenney challenged as violating the Dormant Commerce Clause.[1] In response to SB 3313 becoming law, Defendants filed an

[1] On April 8, 2026, this Court granted Plaintiffs' Motions for Preliminary Injunction after finding that certain provisions of the Rhode Island Cannabis Act

Expedited Motion to Dissolve the Preliminary Injunction and For Indicative Ruling Under Rule 62.1 wherein they request that this Court dissolve the preliminary injunction, allowing the Cannabis Control Commission to proceed with the new application process under the amended Cannabis Act. Dkt. 191, ECF No. 50; Dkt. 252, ECF No. 50. Plaintiff Kenney supports the Defendants' request to dissolve the injunction, but Plaintiff Jensen opposes dissolution.[2] For the following reasons, the Defendants' Motion to Dissolve is GRANTED.

## I. BACKGROUND[3]

On April 8, 2026, this Court granted Plaintiff Justyna Jensen's request for a preliminary injunction which sought to enjoin provisions of the Rhode Island Cannabis Act from taking effect. ECF No. 41. The Defendants appealed that decision to the First Circuit on April 14, 2026. ECF No. 43. While that appeal was pending, the Rhode Island General Assembly considered and passed Senate Bill 3313 and Governor Daniel J. McKee signed it into law on June 10, 2026. ECF No. 50 at 3–4. SB 3313 amended the provisions of the Act that were subject to this Court's preliminary injunction. *Id.* The amendments removed partial residency

violated the Dormant Commerce Clause. *See* Dkt. 24-cv-191, ECF No. 42; Dkt. 24-cv-252, ECF No. 39.

[2] Plaintiff Kenney filed a Response in Support of the Defendants' Motion to Dissolve (Dkt. 252, ECF No. 50) so this Memorandum and Order will focus on Plaintiff Jensen's arguments in Opposition to the Motion to Dissolve (Dkt. 191, ECF No. 51).

[3] The ECF citations through this Memorandum and Order correlate to *Jensen v. Rhode Island Cannabis Control Comm'n, et al.*, 24-cv-191-MRD-AEM.

requirements and social equity criteria that the Court found were likely in violation of the Dormant Commerce Clause and Equal Protection Clause of the United States Constitution. Summed up, the changes to the enjoined provisions are as follows:

- R.I. Gen Laws § 21-28.11-3(3): Removed residency requirement;
- R.I. Gen Laws § 21-28.11-3(23): Removed the entire section on "Disproportionately Impacted Area";
- R.I. Gen Laws § 21-28.11-3(34): Removed references to eligibility for expungement under Rhode Island law, and explicitly noted that equivalent offenses from other jurisdictions qualify;
- R.I. Gen Laws § 21-28.11-3(39): Removed residency requirement;
- R.I. Gen Laws § 21-28.11-10.2(b)(2): Removed residency requirement;
- R.I. Gen Laws § 21-28.11-17.2: Nullified the prior application process and provided for a new application process.

ECF No. 50 at 7–15; ECF No. 50-1.[4]

On July 22, 2026, after receiving responses from Plaintiffs Jensen and Kenney addressing the Defendants' Expedited Motion to Dissolve the Preliminary Injunction and For an Indicative Ruling Under Rule 62.1, this Court issued an Order indicating that it would grant Defendants' Motion to Dissolve if the Circuit Court of Appeals remanded the case to this Court's jurisdiction for that limited purpose. ECF No. 53. On August 11, 2026, the First Circuit remanded this case "for proceedings consistent with the indicative ruling." ECF No. 54. After the limited remand was docketed, Defendants re-filed Motions to Dissolve in both cases.[5] Dkt. 191, ECF No. 55; Dkt. 252, ECF No. 53.

---

[4] The Act as amended can be viewed here: https://perma.cc/454J-P9FG

[5] As stated above, Plaintiffs Jensen and Kenney responded to the Motions to Dissolve when Defendants requested an indicative ruling. With the benefit of the Plaintiffs' responses to the initial Motions to Dissolve, the Court considers the motions fully briefed.

## II. LEGAL STANDARD

When a party seeks to have a preliminary injunction dissolved, the First Circuit recently explained that the party seeking dissolution must "demonstrate to the district court that an intervening change in fact or law 'warrant[ed] the discontinuation' of the preliminary injunction[]." *Washington v. United States Dep't of Hous. & Urb. Dev.,* 171 F.4th 473, 488 (1st Cir. 2026) (quoting *Concilio de Salud Integral de Loiza, Inc. v. Pérez-Perdomo*, 551 F.3d 10, 16 (1st Cir. 2008)). "A decision to *vacate* an existing preliminary injunction is . . . the effective equivalent of a *denial* of a preliminary injunction . . ." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1228 (1st Cir. 1994). In deciding whether to grant a motion to dissolve a preliminary injunction, a district court should consider new evidence that emerged after its original order to determine whether it affects the four-prong preliminary injunction analysis. *Id.*

"To be granted a preliminary injunction, a plaintiff 'must establish' that: (1) it is 'likely to succeed on the merits;' (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief;' (3) 'the balance of equities tips in [its] favor;' and (4) 'an injunction is in the public interest.'" *Doe v. Trump*, 157 F.4th 36, 46 (1st Cir. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The third and fourth factors merge when the Government is the opposing party. *Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021).

## III. DISCUSSION

In its prior Memorandum and Order, this Court enjoined Defendants "from enforcing R.I. Gen Laws § 21-28.11-3(3), § 21-28.11-3(23), § 21-28.11-3(34), § 21-28.11-3(39), and § 21-28.11-10.2(b)(2) and the corresponding Rules and Regulations adopted by the Cannabis Control Commission." Dkt. 191, ECF No. 41 at 27. Further, the Court "[e]njoined [CCC] from proceeding with the current application or licensing period, including (1) holding the lottery to select applicants, and (2) processing any applications submitted under the current licensing period, for both Adult-Use and Social Equity licenses." *Id.* Now, with the passage of SB 3313, which "excise[d] the requirements and criteria enjoined by the injunction[,]" Defendants convincingly argue that there has been "a significant legal change warranting dissolvement of the preliminary injunction[.]" Dkt. 191, ECF No. 50 at 6–7. That said, the Court must evaluate whether the amendments to the Act affect the four-prong preliminary injunction analysis. *See Knapp Shoes, Inc.*, 15 F.3d at 1225 (explaining that "dissolution should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place").

### A. Likelihood of Success

In granting the preliminary injunction, this Court relied on the First Circuit's guidance in *Northeast Patient Group v. United Cannabis Patients and Caregivers of Maine*, 45 F.4th 542, 556 (1st Cir. 2022), to find that Plaintiffs had a likelihood of success on their Dormant Commerce Clause claim. Dkt. 191, ECF No. 41 at 16–19. As the Circuit explained, *Northeast Patient Group* mostly considered whether

Maine's residency requirement ran afoul of the Dormant Commerce Clause based on marijuana being illegal under federal law. 45 F.4th at 546. Now that the Act's enjoined provisions have been amended, the question before this Court is whether those amendments render the preliminary injunction moot. *See Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (2016) (noting the Supreme Court "has consistently and summarily held that a new state statute moots a case").

The Defendants argue the law, as amended, governing the licensing application process renders Plaintiff Jensen's claims moot because "[t]he allegations in the Complaint all pertain to the prior version of the statute that no longer exists; none of the allegations pertain to the amended current version of the law." Dkt. 191, ECF No. 50 at 15. In response, Plaintiff Jensen suggests that the Defendants' voluntary cessation does not cure the constitutional violations and so the claims are not moot. Dkt. 191, ECF No. 51 at 8–9. Jensen maintains that the program continues to violate the Dormant Commerce Clause "[i]f property is required for the new application program, and the State provides an application period of only a few months for out-of-state applicants to obtain property[.]" *Id.* at 8. Finally, Jensen suggests that because the statute was not repealed and a new statutory scheme created, that the Act's amended statutes and regulations continue to fall under the preliminary injunction. *Id.* at 8–9. The Defendants have the better argument.

In *Lowe v. Gagné-Holmes*, the First Circuit discussed mootness and reiterated its long-held position that the party raising the issue has the "heavy burden of showing mootness." 126 F.4th 747, 755 (1st Cir. 2025) (cleaned up). Discussing

mootness and Article III's limitation to "cases" and "controversies," the Circuit explained:

> The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed. [A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome .... [or] the court cannot give any effectual relief to the potentially prevailing party.

*Id.* (cleaned up and internal citations omitted). "Dismissal is required where 'events have transpired to render a court opinion merely advisory.'" *Id.* (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)). That said, there are exceptions to mootness, and the one Plaintiff Jensen argues applies here is the voluntary cessation doctrine. *See* Dkt. 191, ECF No. 51 at 8. For this doctrine to apply, a party must show that "'a defendant voluntar[ily] ceases the challenged practice <u>in order to moot</u> the plaintiff's case <u>and</u> there exists a reasonable expectation that the challenged conduct will be repeated' after the suit's 'dismissal.'" *Lowe*, 126 F.4th at 756 (quoting *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021)) (alteration and emphasis in original).

Applied here, the Court finds that the Defendants have carried their "heavy burden" of showing that Plaintiff Jensen's claims are moot and that the voluntary cessation doctrine does not apply. Beginning with mootness, Plaintiff Jensen's Motion for Preliminary Injunction requested that this Court "issue a preliminary injunction to prevent Defendants from taking any further steps to enforce R.I. Gen. Laws § 21-28.11-10.2(b)(2); R.I. Gen. Laws § 21-28.11-3(3); R.I. Gen. Laws § 21-28.11-3(23); R.I. Gen. Laws § 21-28.11-3(34); R.I. Gen. Laws § 21-28.11-3(39)." Dkt. 191,

ECF No. 9 at 36. That request was premised on the argument that the prior version of the Act violated both the Dormant Commerce Clause and Equal Protection Clause because it favored Rhode Island residents over out-of-state residents for adult use retail and social equity cannabis licenses. *Id.* at 13–32. This Court agreed and issued an injunction consistent with Plaintiff Jensen's request. *See generally* Dkt. 191, ECF No. 41.

However, as the Defendants explain, "[t]he General Assembly, through the passage of Senate Bill 3313, has now made the effects of the injunction permanent by amending the Cannabis Act to remove such [residency] requirements and [social equity] criteria." Dkt. 191, ECF No. 50 at 7. Plaintiff Jensen's two arguments against mootness— (1) that the application program violates the Dormant Commerce Clause if property must be secured to apply for a license and (2) that the Act was amended and not repealed—fail to convince this Court otherwise. Taken in reverse order, that the Act was amended and not repealed puts form over substance. Plaintiff Jensen cites no authority supporting that repeal is required, and this Court's focus is on the substance of the amended Act, not the process by which the General Assembly codified the effects of the injunction.

As to the first argument, Jensen suggests that the program continues to violate the Dormant Commerce Clause because property is required for the new application program and out-of-state applicants may not have enough time to secure such

property.[6] Dkt. 191, ECF No. 51 at 8. This argument fails for many reasons. First, the property requirement was part of the first version of the Act, went unchallenged by Plaintiff Jensen, and was left untouched by the General Assembly. *See* Dkt. 191, ECF No. 52 at 6–8. Further, Plaintiff Jensen's Complaint, which was filed over two years ago, notes that she intended to apply for a license. Dkt. 191, ECF No. 1 ¶ 26. In other words, she has had years, not months, to scour the Rhode Island market in search of a suitable property. She has also had at least four months to search for property since this Court entered its injunction. Beyond that, Jensen never sought to enjoin the property requirement part of the Act and cannot, at this point, seek to do so in response to a Motion to Dissolve the Injunction. Lastly, Jensen relies on *Variscite NY Four, LLC v. New York State Cannabis Control Bd.* for the proposition that "[a] state may violate the dormant Commerce Clause by requiring applicants to have property to participate in the application program, particularly if the application program is only open for a matter of months and state residents have reason to obtain property before the application program is announced." Dkt. 191, ECF No. 51 at 8 (citing 152 F.4th 47, 53 (2d Cir. 2025)). However (and setting aside that this case is not controlling in this jurisdiction), the Second Circuit rejected this argument, finding that an incidental burden on an interstate marijuana market is not "clearly excessive." *Variscite NY Four, LLC*, 152 F.4th at 65. Contrary to Jensen's assertion,

[6] Despite declaring her intent to apply for a license, ECF No. 10 ¶ 4, the Court has no information about Jensen's efforts, or lack thereof, at securing property in anticipation of applying for an adult-use or social equity cannabis license.

that same logic dooms her argument that the amended Act continues to violate the Dormant Commerce Clause.

Turning to Jensen's voluntary cessation exception argument, Dkt. 191, ECF No. 51 at 9, the Court concludes it fares no better than the others. The First Circuit discussed the voluntary cessation exception in *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54 (1st Cir. 2016). The case involved the Town of Portsmouth's lawsuit against state and federal agencies alleging that tolls violated provisions of the Federal-Aid Highway Act. *Id.* The Town filed for summary judgment in November 2013 and the General Assembly enacted legislation in June 2014 that prohibited toll collection. *Id.* at 58. The Defendants then successfully moved to dismiss all claims as having been rendered moot by the new statute. *Id.* As the appellate court explained, "[b]ecause the state legislature [] prohibited toll collection, '[t]he controversy [] is at this point neither immediate nor real.'" *Id.* at 59 (quoting *ACLU of Mass v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 54 (1st Cir. 2013)). The Circuit rejected the plaintiff's reliance on the voluntary cessation exception because "there [wa]s no basis upon which to conclude that the state legislature repealed the tolls in order to make the present litigation moot." *Id.*

In this case, there is no evidence that the General Assembly, members of a wholly different branch of government from these Defendants, amended the Act in order to moot Plaintiff Jensen's claims or this injunction. *See Lowe*, 126 F.4th at 756. Further, the First Circuit has endorsed the idea that "[g]enerally, [courts] presume that a state legislature enacts laws in good faith . . . not with the improper motive of

mooting pending litigation." *Town of Portsmouth, R.I.*, 813 F.3d at 59 (first citing *Miller v. Johnson*, 515 U.S. 900, 916 (1995) then citing *Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 376 (2d Cir. 2004)). Finally, and perhaps dispositive of this argument, is the First Circuit's notation that "although the Supreme Court has not hesitated to invoke the voluntary cessation exception when considering the conduct of private, municipal, and administrative defendants, it has not applied the exception to state legislatures." *Id.* Instead, the Supreme Court "has consistently and summarily held that a new state statute moots a case, without further inquiry. *Id.* (collecting cases).

To support her contention that the voluntary cessation exception applies here, Jensen relies on *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982). In that case, a state court ordered the city to issue a license for Aladdin's Castle to operate an amusement park, and in issuing the license it reduced an age restriction (on unaccompanied children in the amusement park) from seventeen to seven. *Id.* at 287. Then, "less than a month after the city had complied with the state-court injunction by issuing the license to Aladdin, the city adopted a new ordinance repealing Aladdin's exemption, thereby reinstating the 17-year age requirement." *Id.* In finding that the case was not moot, the Court explained:

> In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated. The city followed that course with respect to the age restriction, which was first reduced for Aladdin from 17 to 7 and then, in obvious response to the state court's judgment, the exemption was eliminated. There is no certainty that a similar course would not be pursued if its most recent amendment were effective to

> defeat federal jurisdiction. We therefore must confront the merits of the vagueness holding.

*Id.* at 289. That is different from the facts before this Court because nothing suggests that the Rhode Island General Assembly would repeal SB 3313 if this Court vacated the injunction on mootness grounds. While this lawsuit may have served as the catalyst for the General Assembly to reexamine provisions of the Cannabis Act to help expedite enactment of the law, it cannot be said that the amendments were passed to moot out this case. *See Diffenderfer v. Gomez–Colon,* 587 F.3d 445, 452 (1st Cir. 2009) (holding in part "[new] legislation is generally considered an intervening, independent event and not voluntary action, particularly when the governmental entity taking the appeal, as here, is not part of the legislative branch").

The General Assembly's passage of SB 3313 removed provisions deemed likely to violate the Constitution and because of that, the controversy at issue in the preliminary injunction is no longer immediate or real. Therefore, Plaintiff Jensen no longer has a likelihood of success on the merits of her Constitutional claims.

**B. Remaining Injunction Factors**

It is well established that "[t]he *sine qua non* of th[e] four-part [preliminary injunction] inquiry is likelihood of success on the merits." *New Comm. Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Id.* Based on this, the Court need not examine irreparable harm, the balance of equities, or the public interest.

## IV. CONCLUSION

The Court concludes that the passage of SB 3313 moots out its previous Order granting Plaintiff Jensen's request for a preliminary injunction and enjoining various provisions of the Act. Therefore, the prior preliminary injunction is DISSOLVED and the Defendants are free to implement the law as they see fit, including accepting applications, holding a lottery, and issuing adult-use recreational and social equity cannabis licenses.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

August 14, 2026